United States District Court
Southern District of Texas
FILED

AUG 2 8 2003

Michael N. Milby
Clerk of Court

IN THE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

FRANCISCO GUERRA MOYA )
Petitioner, )
)
v. )
) C.A. No. B-03-149
A.G. WINFREY, INTERIM FIELD OFFICE DIRECTOR, )
BUREAU OF IMMIGRATION AND CUSTOMS )
ENFORCEMENT, and )
JOHN ASHCROFT, )
UNITED STATES ATTORNEY GENERAL, )
Respondents. )
_____)

## PETITION FOR WRIT OF HABEAS CORPUS
## AND BRIEF IN SUPPORT THEREOF

Francisco Guerra Moya files the instant Petition for Writ of Habeas Corpus and Injunctive and Declaratory judgments. Petitioner seeks relief from a final order of removal, entered on April 10, 2003. The plaintiff seeks various forms of declaratory and corresponding injunctive relief, as more fully discussed below.

### I. JURISDICTION

1.  Petitioner asserts habeas jurisdiction under Title 28, United States Code, ("28 U.S.C."), §2241, to review the order of removal entered against him on April 10, 2003. Respondent Winfrey has administrative control over petitioner's case and may issue a "bag and baggage" letter, commanding petitioner to report for immediate deportation, at any time. This creates significant restrictions on petitioner's liberty not shared by the population at large, and constitutes custody for purposes of 28 U.S.C. §2241.

1

Respondents Winfrey and Ashcroft therefore are the appropriate custodians of petitioner for habeas purposes.

## II. THE PARTIES

2.  The petitioner is a native and citizen of Mexico who became a Lawful Permanent Resident, ("LPR"), of the United States on April 26, 1976. He has resided continuously in the United States since that date. He is the subject of an administratively final order of removal entered on April 10, 2003.

3.  Respondent Winfrey is the Interim Field Office Director of the San Antonio, Texas, office of the Bureau of Immigration and Customs Enforcement, ("B.I.C.E."). Respondent Ashcroft is the United States Attorney General.

## III. FACTS

4.  The petitioner is a 48 year old native and citizen of Mexico who has four United States citizen children: Yesenia Espinosa Guerra, age 26, Janie Guerra, age 23, Veronica Guerra, age 20, and Francisco Guerra, Jr., age 14. The petitioner is divorced from the mother of his children, who is also an LPR. The petitioner's parents are LPR's who reside in Zapata, Texas. He has three siblings, two of whom are LPR's. The other is a U.S. citizen, and all of the petitioner's family resides in the state of Texas. He has been steadily employed in the construction industry for many years.

5.  On or about April 30, 1982, the petitioner entered a building without the consent of the owner with intent to commit theft. On August 23, 1982, he pled guilty to burglary, in the District Court of Nueces County, 105th Judicial District of Texas. He was sentenced to two years confinement and granted two years probation. The petitioner was also convicted of DWI in Nueces County in November, 1982. He was sentenced to one

year probation. On August 23, 1984, the petitioner was discharged from probation and the judgment of conviction for burglary was set aside.

On March 28, 1997, the petitioner was convicted, in Dallas County Criminal Court # 7, for "Unlawfully Carrying a Weapon." He was granted 8 months probation and ordered to perform 80 hours of community service.

**Removal proceeding before the United States Immigration Judge**

6. Removal proceedings began upon issuance of a Notice to Appear, ("NTA"), by the Immigration and Naturalization Service, ("INS"), on February 3, 2000.[1] The INS alleges that the respondent is a native and citizen of Mexico and an LPR of the United States who is removable pursuant to 8 U.S.C. §1227(a)(2)(C) in that he has been convicted of carrying a firearm in violation of any law after admission. The petitioner sought relief pursuant to 8 U.S.C. §1229a(b), and urged the IJ that has not been convicted of an aggravated felony and has resided lawfully in the U.S. for more than seven years after admission, and as an LPR for more than five years. In support of his position, he emphasized that because the conviction was vacated prior to the enactment of the new definition of aggravated felony, the burglary offense should not be included among those described at 8 U.S.C. §1101(a)(43)(G). Therefore, the petitioner submitted, he has not been convicted of an aggravated felony because the definition of conviction for an aggravated felony did not apply on the date of conviction, and does not apply under the new definition, as the conviction was vacated prior to IIRAIRA's enactment. The petitioner also demonstrated that BIA precedent decisions concerning the appropriate

---

[1] The INS merged into the newly organized Department of Homeland Security pursuant to the Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135, effective March 1st 2003.

application of the stop-time provision of 8 U.S.C. §1229a(3)(d)(1) demonstrate that 8 U.S.C. §1182(a) is not applicable against a respondent who was admitted as a LPR over 24 years ago. Further, the petitioner argued, even though the burglary offense is a qualifying offense under 8 U.S.C. §1182(a)(2), because the crime involving moral turpitude was not committed within five years of admission, the petitioner is not removable under 8 US.C. §1227(a)(2). The "stop-time" rule should not be read to terminate the continuous lawful presence of an LPR who is not, as the result of the qualifying offense, inadmissible under 8 U.S.C. §1182(a)(2), or removable under 8 US.C. §1227(a)(2).

### Decision of the United States Immigration Judge

7. At an individual hearing on December 4, 2000, the Immigration Judge, ("IJ"), found the petitioner had been convicted of an aggravated felony within the meaning of 8 USC §1101(a)(43)(G). Moreover, the IJ stated that pursuant to 8 U.S.C. §1229b(3)(d)(1) petitioner's LPR status terminated prior to the acquisition of seven years of lawful permanent residence for purposes of relief pursuant to 8 U.S.C. §1129(b)(a). After concluding that even relief pursuant to 8 U.S.C. §1229(c) was unavailable, the IJ ordered the petitioner removed from the United States.

### Appeal to the Board of Immigration Appeals

8. Petitioner's appeal to the Board of Immigration Appeals, ("BIA"), noted that in his case, the aggravated felony definition must be applied to an offense which was not an aggravated felony until 15 years after it's commission, and to a conviction which was vacated 16 years prior to the initiation of removal proceedings. Although the new

definition of "conviction," as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, ("IIRAIRA"), and found at 8 U.S.C. §1101(a)(48), states that any finding of guilt by any court is sufficient for purposes of immigration laws, that definition did not apply in 1982, when the petitioner was convicted, nor did it apply in 1984, when the judgment of conviction was set aside. *See Matter of Ozkok,* 19 I&N Dec. 546, (BIA 1988). The petitioner pointed out that the conviction was vacated prior to the enactment of the new definition of aggravated felony, therefore the offense is not within the scope of 8 U.S.C. §1101(43)(G). Petitioner's brief also demonstrated that BIA precedent did not speak directly to the unique factual situation presented in his appeal. Nevertheless, the BIA affirmed the IJ's decision without opinion on April 10, 2003.

### Motion to Reconsider Affirmance without Opinion

9. Petitioner moved the BIA to reconsider the Affirmance without Opinion on May 8, 2003. Petitioner's Motion to Reconsider implored the BIA to resolve a substantive question of law, namely: the applicability of the definitions of "conviction" as defined at 8 USC §1101(a)(48) and "aggravated felony" as defined at 8 U.S.C. §1101(a)(43)(G), as well the applicability of 8 U.S.C. §1129(b) to an offense found in 8 U.S.C. §1182(a)(2) which would never render an LPR deportable under 8 USC §1227(a)(2). The BIA denied the petitioner's Motion for Reconsideration on June 26, 2003.

### Petition for Review

10. On May 8, 2003, petitioner filed a Petition for Review of the BIA's decision to the United States Court of Appeals for the Fifth Circuit. On June 26, 2003 the Office of Immigration Litigation filed its' Motion to Dismiss the Petition for Review for Lack of Jurisdiction. On July 16, 2003, Petitioner filed his Opposition to the Respondent's Motion to Dismiss. On July 20, 2003, the Fifth Circuit issued its' order granting

Respondent's Motion to Dismiss for lack of jurisdiction and denying the Petition for Review.

### IV. CAUSES OF ACTION IN HABEAS CORPUS
####   a.   VIOLATION OF DUE PROCESS

11.   This Court has jurisdiction under 28 U.S.C. §2241 to review orders of removal where, as here, direct review is unavailable for reasons other than "deliberate by-pass" of such review. *See INS v. St. Cyr,* 121 S. Ct. 2271 (2001), citing, with approval, *U.S. ex rel. Marcello v. District Director,* 634 F.2d 964, (5th Cir. 1981). *See also Jama v. U.S. I.N.S.,* 22 F. Supp. 2d. 353 (D. N.J. 1998). The petitioner did not bypass direct review. In fact, he has exhausted all administrative remedies. Most significantly for purposes of habeas corpus, when the petition for review was filed, the petitioner was in the constructive custody of respondent Winfrey, as no stay of the removal order had been granted. Said custody violates the laws and Constitution of the United States, for a variety of reasons. *See Hensley v. Municipal Court,* 411 U.S. 345 (1973).

12.   The removal order against petitioner was obtained in violation of Due Process. It violates Due Process where, as here, the aggravated felony definition, which requires a conviction, is applied to an offense which could not have been considered either a final conviction or an aggravated felony until 15 years after the sentencing court set the judgment aside. Additionally, the IJ mistakenly found petitioner ineligible for relief pursuant to the termination of continuous lawful resident provisions of 8 U.S. C. §1229(b)(3)(d)(1) because commission of the crime triggered the "stop-time" provisions when the offense was committed. Further, denial of the motion for reconsideration was

improper as a matter of law because the appeal was not proper for affirmance without opinion.

## V. SECOND CAUSE OF ACTION-<br>INJUNCTIVE AND DECLARATORY JUDGMENT

13.  Executing a removal order can have serious, and in some cases, permanent consequences. Even where the person was not deportable as charged, and deportation results in a miscarriage of justice, it can make it difficult, if not impossible, to set aside the deportation order. *See Lara v. Trominski*, 216 F.3d 487, 494, n.8 (5th Cir. 2000) (Must show that there is a freestanding due process right to be free of 'gross miscarriage of justice' during the immigration process.").

**The retroactive characterization of petitioner's offense as a conviction for an aggravated felony violates Due Process as declared in a series of Supreme Court involving "fair notice."**

14.  Although not punishment for a criminal offense, deportation has long been recognized as a "penalty." *See Reno v. American-Arab Anti-Discrimination Committee,* 525 U.S. 471, 497-98 (1999), Justice Ginsberg, concurring in Part I and the result. Deportation would then become an additional penalty, retroactively attached to the "criminal offense." This, it is submitted, would be a "manifest injustice," and would violate Due Process. *See Bradley v. School Bd. of City of Richmond,* 416 U.S. 696, 716 (1974) (retroactive application of a law violates Due Process if it creates a "manifest injustice), and *B.M.W. of North America v. Gore,* 517 U.S. 559, 574 (1996). ("Elementary notions of fairness enshrined in this Court's constitutional jurisprudence dictate that a person receive fair notice not only of the conduct that will subject him to punishment but also of the severity of the penalty...").

15.     In his Oral Decision, ("OD"), the IJ discussed petitioner's adjudication of guilt for burglary in 1982. He noted that "a judge set aside the verdict and dismissed the accusation, complaint, information, or indictment. The judge also released respondent from all disabilities and penalties resulting from the original order of probation." OD at 4. The IJ then stated, "[P]ursuant to *Matter of Roldan, supra,* such expungement of the conviction has not (*sic*) effect in this immigration proceeding and respondent is still to be considered convicted of burglary of a building for purposes of this removal proceeding." OD at 5.

16.     §42.01 of the Texas Code of Criminal Procedure, ("TCCP"), is entitled "Judgment", and states, in relevant part,

"A judgment is the written declaration of the court signed by the trial judge and entered of record showing the conviction or acquittal of the defendant. The sentence served shall be based on the information contained in the judgment..." TCCP Art. 42.02 is entitled, "Sentence", and states: "The sentence is that part of the judgment, or order revoking a suspension of the imposition of a sentence, that orders that the punishment be carried into execution in the manner prescribed by law."

17.     8 U.S.C. §1101(a)(48) defines "conviction", with respect to an alien, as

> "a formal judgment of guilt of the alien entered by a court or, *if adjudication of guilt has been withheld*, where a judge or jury has found the alien guilty or (1) *the alien has entered a plea of guilty* or nolo contendere or has admitted sufficient facts to warrant a finding of guilt, *AND* (2) *the judge has ordered some form of punishment*, penalty, or restraint on the alien's liberty to be imposed."

8 U.S.C. §1101(a)(48), (emphases added).

18.     The definition of "conviction" at 8 U.S.C. §1101(a)(48) requires a finding of guilt and some form of sentence or punishment. The petitioner respectfully urges this Court

8

that he has not been convicted because he has never been sentenced, according to Texas law. Therefore he has not suffered a conviction within the meaning of INA 8 U.S.C. §1101(a)(48). Despite the holding by the Fifth Circuit in *Moosa v. INS,* 171 F.3d 994 (5th Cir. 1999), the facts herein presented are distinguishable from those on which the *Moosa* Court based it's ruling.

19. Moosa was given deferred adjudication for Indecency with a Child, and argued that he had not been convicted within the meaning of the INA. The Fifth Circuit examined the statutory language of at 8 U.S.C. §1101(a)(48) and noted the two prong analysis for a conviction, *Moosa v. INS,* 171 F.3d 994, 999-1000. The Court noted that the applicant served time in jail on work release, had to report to a probation officer every month, and was required to attend counseling, *Moosa v. INS, supra,* at 1004. "This was a punishment," The Fifth Circuit concluded, "and a restraint on his liberty." *Ibid.*

20. While the petitioner was ordered to pay court costs, a fine, and a fee, the judge never imposed a sentence. When the petitioner complied with the conditions, the matter was dismissed with no sentence as a result of any finding under the statute. The BIA identifies a conviction as an admission, determination, or entry of guilt linked with punishment, *Matter of Roldan,* 22 I&N Dec. 512 (BIA 1999). The respondent entered a plea of guilty and the court accepted his admission, but unless the court finds that the defendant has committed another offense, no sentence results. The probationary period imposed satisfied the first prong of the BIA analysis in *Matter of Ozkok,* 19 I&N Dec. 546, (BIA 1988). However, all of the elements necessary for a conviction as defined at 8 U.S.C. §1101(a)(48) are not satisfied as to petitioner because no sentence was imposed as

a result of that admission. The BIA envisions a nexus between finding or admission or guilt and any court ordered sanction, as did the Fifth Circuit in *Moosa*.

21.     As the BIA noted in *Matter of Roldan, supra*, "Until Congress enacted §322 of IIRAIRA, the definition of "conviction" for immigration purposes had been a fluid one." 22 I&N Dec. 512 (BIA 1999) at 516.

In *Matter of Ozkok,* 19 I&N Dec. 546, (BIA 1988), the BIA adopted a three-part definition of conviction:

> "(1) a judge or jury has found the alien guilty or he has entered a plea of guilty or nolo contendere or he has admitted sufficient facts to warrant a finding of guilty;
> (2) the judge has entered some form of punishment, penalty, or restraint on the person's liberty to be imposed (including but not limited to incarceration, probation, a fine or restitution, or community-based sanctions such as a rehabilitation program, revocation or suspension of a driver's license, deprivation or nonessential activities or privileges, or community service); and
> (3) a judgment or adjudication of guilt may be entered if the person violates the terms of his probation or fails to comply with the requirements of the court's order, without availability of further proceedings regarding the person's guilt or innocence on the original charge."

*Matter of Ozkok, supra,* at 551-52.

22.     In *Martinez Montoya v. INS,* 904 F.2d 1018, (5th Cir. 1990), this Court found that a deferred adjudication in Texas does not comport with the BIA's requirements for a conviction as outlined in *Matter of Ozkok, supra*. "Under the *Ozkok* test, in order to consider *Martínez Montoya* convicted for immigration purposes, further proceedings on the issue of his guilt must not be available before a judgment can be entered. Because further proceedings are available under the Texas deferred adjudication procedure, this requirement is not satisfied." *904 F.2d 1018, 1026.*

However, in *Moosa v. INS,* 171 F.3d 994, 1004, (5th Cir. 1999), this Court found "...(A) Texas deferred adjudication...is a "conviction"....Moosa's deferred adjudication meets each prong of the new definition of "conviction."

23. *Martinez Montoya* was controlling precedent in the Fifth Circuit after the plea was taken. *Martinez Montoya* controlled aftern the matter was set aside. Only through retroactive application of 8 USC §1101(a)(48) can the petitioner be considered to have suffered a conviction for immigration purposes. The BIA's ruling in *Roldan, supra,* on which the IJ relied in finding petitioner beyond the protections available at 8 U.S.C. §1229b(a), finds retroactive application permissible, even though it's application attaches new legal consequences to events completed before its enactment.

24. The IJ stated: "The Court recognizes that respondent's conviction for which he was imprisoned for two years would not have been considered an aggravated felony under the Act until the Act was amended on September 30, 1996 pursuant to IIRIRA." OD at 6. The IJ concluded: "Therefore, that provision applies to the present case even though the respondent was convicted in 1982. OD at 7.

**The language of the United States Supreme Court in *INS v. St. Cyr, supra,* emphasizes that the legal consequences of any action should be evaluated under the law as it existed on the date of it's commission.**

25. The BIA should have viewed the respondent's guilty plea and subsequent vacature under the law as it existed when it occurred. When filtered through the rationale of the United States Supreme Court in *St. Cyr, supra,* retroactive application of the definitions of conviction and aggravated felony results in fundamental unfairness to this respondent because it is contrary to the notions of fair notice and reasonable reliance on the state of the law. The IJ correctly noted that the amendments to IIRAIRA state that the

definitions of conviction and aggravated felony apply to convictions entered on before, or after the date of enactment. *See* OD at 6.

26.   The rationale employed by the Supreme Court in *St. Cyr, supra,* applicable in the instant matter as well, compels the presumption against retroactivity, because the petitioner is disqualified for relief as a result of incidents resolved over a decade earlier. Even though Congress was specific as to the retroactive effect of 8 U.S.C. §§1101(a)(48) and 1227(a)(3)(A)(iii), the second prong of the retroactivity analysis employed in *INS v. St. Cyr, supra,* asks whether applying those definitions produces an impermissible retroactive effect for aliens who, like petitioner, entered a plea at a time when the plea would not have rendered them inadmissible or removable.

27.   As the Supreme Court stated in *St. Cyr, supra,* "The inquiry into whether a statute operates retroactively demands a commonsense, functional judgment about whether the new provision attaches new legal consequences to events completed before its enactment. *St. Cyr* at 2291 citing *Martin,* 527 U.S. 357-358 (quoting *Landgraf,* 511 U.S. at 270). Despite the specific language of Congress, determinations as to removability and eligibility for relief should be shaped to ensure that notions of settled expectations and finality are reasonably observed.

28.   Applications of 8 U.S. C. §§101(a)(48) and 1227(a)(2)(A)(iii) and the elimination of any possibility of relief for people who entered into plea agreements with the expectation that they would be eligible for such relief, if relief ever became necessary, clearly creates liability for events that have already run their course. In this case, the petitioner would not have even needed any relief. As an LPR, he would neither be deportable or removable. Moreover, by operation of Texas law, especially when

considered in light of this Court's ruling in *Martinez Montoya, supra,* establish that the term "conviction" cannot be fairly applied to him, because no sentence was ever imposed. The retrospective creation of encumbrance upon petitioner's LPR status through IIRAIRA §321 is particularly egregious, because his guilty plea would not have rendered him removable when entered, could not have been considered a conviction under 5th Circuit law after it was vacated, was not considered an aggravated felony until 12 years after the plea was set aside, and can only reach him now through retroactive application.

29.   Prior to concluding that commission of the offense which subsequently lead to ineligibility for relief under 8 U.S.C.§1229b(a), the IJ stated: "[I]n §240A(d)(1)... continuous residence terminates when the alien has committed an offense referred to in §212(a)(2) renders the alien inadmissible to the United States under 212(a)(2) or removable from the United States under 237(a)(2) or 237(a)(4) whichever is earliest." Transcript of removal proceeding, ("TR") at 24. The IJ later said:

> [T]he Court believes that the stop time provision of §240A(d)(1) would also apply to this case since the respondent has committed an offense, burglary of a building with intent to commit theft which is crime involving moral turpitude, it would render him inadmissible to the United States under 212(a)(2) of the Act. If he leaves the United States and would attempt to come back into the United States, he would be inadmissible even though he is a permanent legal resident unless he's been granted a waiver for that crime and that would be under §101(a)(13)(c)(V).

TR at 42.

30.   The petitioner urged the IJ and the BIA that commission of the burglary offense did not activate the stop-time provision because INA §212(a)(2) is not applicable against an LPR unless the LPR departs the United States and seeks readmission. More significantly, while commission of a CIMT is a ground of inadmissibility, unless the offense is

13

committed within five years of any admission, a single conviction for a CIMT does not render an LPR removable.

31.　Upon correctly finding that the burglary was a qualifying offense under 8 U.S.C. §1182(a)(2), the IJ incorrectly concluded that the stop time provisions took effect then, even though the petitioner was not then inadmissible under 8 U.S.C. §1182(a)(2) nor removable under 8 U.S.C. §1227(a)(2). The IJ's choice of words reveal his misapprehension. Even though he concluded that the stop-time rule cancelled the petitioner's lawful residence for purposes of relief under 8 U.S.C. §1229b(a) when the petitioner committed it, the IJ's basis for so finding was 8 U.S.C. §1101(a)(13)(c)(V), not 8 U.S.C. §1182(a)(2). " *If* he leaves the United States and attempts to come back into the United States *he would be* inadmissible even though he is a permanent legal resident." TR at 24, (emphasis added). Therefore, in the IJ's analysis, the dispositive provision of law spurring termination of the petitioner's LPR status is not 8 U.S.C. §1182(a)(2), but the definition of "admission" located at 8 U.S.C. §1101(a)(13). This misapplied dissection of 8 U.S.C. §1229(b)(3)(d)(1) caused the IJ to find the petitioner ineligible for §1229b(a) relief, and constitutes reversible error.

**The BIA's affirmance without opinion violated petitioner's right to due process.**
32.　The rights to appeal, and file motions to reopen and reconsider a removal order, are protected by regulation, and to a lesser extent, by statute. Those rights are meaningless where they can be unilaterally destroyed by the Attorney General, through the BIA "streamlining" process, without meaningful consideration of legal arguments in cases not strictly controlled by existing BIA or federal court precedent.

33.　The Fifth Circuit has stated, "While we do not require that the BIA address evidentiary minutiae or write any lengthy exegesis, it's decision must reflect meaningful

14

consideration of the relevant substantial evidence supporting the alien's claims. *Masieh v. INS*, 73 F.3d 579, 584 (5th Cir. 1996), *citing Ramos v. INS*, 695 F.2d 181, 189 (5th Cir. 1983). *See also Diaz Resendiz v. INS*, 960 F.2d 493, 495, 497-98 (5th Cir. 1992); *Ganjour v. INS*, 796 F.2d 832, 839 (5th Cir. 1986). In *Bahramnia v. INS*, 782 F.2d 1243, (5th Cir. 1986), this Court reminded, "The BIA must examine the substance of the petitioner's case to a limited extent in order to determine whether movant has established a *prima facie* case." 782 F.2d 1243, 1246. In *Soadjede v. Ashcroft*, 324 F.3d 830 (5th Cir. 2003), this Court agreed with several other circuit courts in finding that the summary affirmance procedure does not deprive the courts of appeal of a basis for review. That opinion mentions that due process concerns were addressed by the Department of Justice, ("DOJ"), prior to enactment of the streamlining regulations.

> The DOJ reasoned that the "risk of erroneous decisions resulting from the streamlining of BIA procedures is minimal because most appellants will already have had a full evidentiary hearing before an Immigration Judge." The DOJ also noted that the government has a significant interest in concentrating the resources of the BIA on "cases where there is a significant possibility of reversal, or where a significant issue is raised in the appeal." Ultimately, the DOJ concluded that "an endorsement of the result reached by the decision maker below satisfies any conceivable due process requirement concerning justifications for the decisions made in any appellate process that the government decides to provide."

324 F.3d 830, 831, (5th Cir. 2003). (internal citations omitted).

34.   The DOJ and the Fifth Circuit recognize that presentation of significant issues on appeal requires more than automatic approval of the decision of the IJ, despite case load concerns. The petitioner respectfully submits that the BIA's role in resolving significant and outstanding questions concerning interpretation of the INA outweighs disposing of cases in due course.

35.     When a single Board member reviews a common claim for relief arising from an ordinary factual situation, and clearly resolves every substantial legal issue by applying existing BIA or Federal court precedent, affirmance without opinion is appropriate. A case which requires extension of precedent to unique claims generated by extraordinary facts, and therefore varies significantly, or a decision not thoroughly addressing substantive questions of law, does not fall under Title 8, Code of Federal Regulations, (" 8 C.F.R."), §3.1(e)(4). The petitioner stipulates that when the factual and legal issues raised are not so insubstantial that the case warrants a written opinion. *See De La Llana Castellon v. INS*, 16 F.3d 1093, 1096 (10th Cir. 1994); *Hengan v. INS*, 79 F.3d 60, 64 (7th Cir. 1996). Here, petitioner plainly distinguished the factual situation and unique legal questions presented in his matter from those in the case relied on by the IJ. The BIA's failure to supply any intelligible guidance amounts to an abuse of discretion and a denial of due process. *González Oropeza v. United States Attorney General* 2203 U.S. App. Lexis 2974. *See also SEC v. Chenery Corp.*, 332 U.S. 194 (1946).

**The BIA's denial of the motion to reconsider was an abuse of discretion.**
36.     Given that petitioner's briefs and motions sufficiently presented the relevant issues, the BIA should have responded to those arguments. *Lwin v. INS*, 144 F.3d 505 (7th Cir. 1989). In it's decision denying petitioner's motion for reconsideration, the BIA stated: "We have reviewed the respondent's motion and note that he presents the same arguments which we previously considered before rendering a decision in this case." *See* Order of the BIA, dated June 26, 2003.

37.     The petitioner respectfully reminds this Court that his appeal and motion for reconsideration presented substantive due process arguments not presented before the IJ. More significantly, by "declining to revisit" the relevant issues, the meager comments by

the administrative agency do not provide this Court with "comprehensible reason for its' decisions sufficient for the court to conduct its' review and to be assured that the petitioner's case received individualized attention. *Paramasany v. Ashcroft*, 295 F.3d 1047 (9th Cir. 2002).

38. Even when the single reviewing Board member believes the underlying decision was correct and any errors were not harmless nor ultimately dispositive of the IJ's analysis, affirmance without opinion still requires the satisfaction of two more conditions precedent: The case must be squarely controlled by existing BIA or federal court precedent, and the relevant issues arise from ordinary, and not novel or unique, factual situations. If legally significant facts fall in recognizable patterns, precedent is easily applied by means of comparison of significant factual circumstances. Further review and analysis of particular dynamics shaping the claim cannot meaningfully impact the ultimate result. The denial of the motion to reconsider provides no explanation in connection with that independent evaluation. "A statement of reasons for a decision is a norm of administrative law." *Guentchev v. INS*, 77 F.3d 1036, 1038 (7th Cir. 1996).

39. A denial of reopening by the BIA should not be casually reversed. *Bahramnia v. INS* at 1244. Here however, the BIA twice declined to even comment on the urgent question: Given the widespread impact of the Supreme Court's retroactivity analysis in *INS v. St. Cyr, supra,* may the definitions included at IIRAIRA §321 be constitutionally applied to an LPR whose adjudication of guilt would not have rendered him removable as a result? For all of those interconnected reasons, summary affirmance would be plainly improper because the abundance of legal questions arising here demand proper

consideration. In this particular matter, failure to so speak was an abuse of the agency's discretion.

WHEREFORE, it is urged that the Court grant the following relief:

1. That the Writ of Habeas Corpus issue, and

2. The removal order be vacated, and the petitioner's case be remanded to the BIA for further proceedings consistent with the principles articulated herein;

3. That respondents Winfrey and Ashcroft be enjoined from executing the order of removal; and

4. That the Court award such other and further relief as the Court deems just and appropriate under all of the circumstances.

Respectfully submitted,

_____
Jodilyn M. Goodwin, Esq.
1322 East Tyler
Harlingen, Texas, 78550
956-428-7212
956-428-7360(FAX)
Federal Id: 20102
Texas State Bar: 00793835

**VERIFICATION**

I, Jodilyn M. Goodwin, certify that I am familiar with the facts as stated above, and that they are true and correct to the best of my knowledge and belief.

_____
Jodilyn M. Goodwin, Esq.

**Certificate of Conference**

I, Jodilyn M. Goodwin, certify that on August 28th, 2003, I conferenced with SAUSA Lisa Putnam and advised her of the filing of this writ on this day.

_____
Jodilyn M. Goodwin, Esq.

**CERTFICATE OF SERVICE**

I, Jodilyn M. Goodwin, certify that today, August 28th 2003, a copy of the petition for writ of habeas corpus, was served upon SAUSA Lisa Putnam, by hand delivery to 1717 Zoy Street, Harlingen, Texas, 78551.

_____
Jodilyn M. Goodwin, Esq.