IN THE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

DEC 1 2 2003

Michael N. Milby
Clerk of Court

FRANCISCO GUERRA MOYA )
Petitioner, )
)
v. )
) C.A. No B-03-149
A.G. WINFREY, INTERIM FIELD OFFICE DIRECTOR, )
BUREAU OF IMMIGRATION AND CUSTOMS )
ENFORCEMENT, and )
JOHN ASHCROFT, )
UNITED STATES ATTORNEY GENERAL, )
Respondents. )
_____)

**PETITIONER'S OPPOSITION TO RESPONDENT'S MOTION TO DISMISS**

COMES NOW the petitioner, Francisco Guerra Moya, by and through his attorney of record, Jodi Goodwin, and hereby submits this, his opposition to the Respondent's Motion to Dismiss his Petition for Writ of Habeas Corpus.

The Department of Homeland Security, ("DHS"), concedes that Mr. Guerra's 1982 conviction was set aside prior to the initiation of proceedings to remove him, but asserts that he remains convicted within the meaning of Title 8, United States Code, ("8 U.S.C."), §1101(a)(48) because "Congress intended him to be convicted for immigration purposes." Respondent's Motion to Dismiss at 7. The DHS maintains that the set aside conviction is for an aggravated felony notwithstanding subsequent court action, that the petitioner is not eligible for relief pursuant to 8 U.S.C. §1182(c) despite the ruling of the United States Supreme Court in *I.N.S. v. St. Cyr*, 121 S. Ct. 2271 (2001), and further, that the "stop-time" rule applies retroactively to petitioner's vacated conviction, thereby rendering him ineligible for relief pursuant to 8 U.S.C. §1229a(b).

1

**ISSUE I:** **The previously vacated plea of guilt is not a conviction for purposes of removal proceedings.**

The petitioner respectfully submits that there is a meaningful distinction between the factual situation from which the BIA's decision in *Matter of Roldan, supra,* arose, and his own. The respondent in *Roldan* pleaded guilty to possession of marijuana in Idaho in 1993. *Int. Dec. 3377* at 3. Adjudication of judgment was withheld, and he was issued an Order to Show Cause by the INS in 1994. The respondent contested deportability because his conviction was subsequently vacated pursuant to § 19-2604(1) of the Idaho Code. *Id* at 4.

In *Roldan*, deportation proceedings had already begun when the conviction was vacated. Roldan had adequate notice that his criminal conduct and plea of guilty may have placed his immigration status in jeopardy. Here, however, the petitioner only became amenable to removal 16 years after the guilty plea was set aside. Given the state of the immigration laws on the date he pled, it is fundamentally unfair to remove the petitioner without first affording him an opportunity to present evidence of his numerous equities and length of residence in the United States.

Article I of the United States Constitution grants plenary power over immigrants, naturalization, and immigration laws to Congress. U.S. Const. Art. I, Sec. 8, cl. 4. However, a long-term LPR residing with his entire nuclear and extended family may accrue significant business and property ties over the years. *See Demore v. Kim*, 123 S.Ct. 1708, 1711 (2003)

A law enacted by Congress to remove that person should provide, "safeguards against essentially unfair procedures." *Bridges v. Wixon* 326 U.S. 135, 153, (Supreme Court 1945). Because in the instant case the aggravated felony definition is applied to an

2

offense which was not an aggravated felony until 15 years after it's commission, and the definition of conviction is applied 16 years subsequent to vacature of a guilty plea, summary removal is inherently inequitable, despite the almost unlimited authority of Congress to regulate the presence of non-citizens.

In the case of a non-citizen, "whose roots were deeply fixed in this land," the United States Supreme Court noted "deportation without a hearing may be corrected by habeas corpus." 326 U.S. 135, 156. Here, the petitioner was afforded a hearing before the Immigration Judge, ("IJ"), and an opportunity for review of that decision by the Board of Immigration Appeals, ("BIA"). Yet the IJ pretermitted his application prior to considering the merits, and the BIA dismissed his appeal without commenting on the ponderous legal issues presented. The petitioner respectfully submits that summary removal as a result of a conviction which was vacated over a decade prior to the initiation of removal proceedings and for which he could not have been deported initially, does not comport with due process, even in the face of plain language from Congress.

In *Bridges v. Wixon, supra,* the Supreme Court considered the due process rights of a long-time resident non-citizen who had been accused of involvement, (and perhaps collaboration), with the communist party. Despite that onerous accusation against a non-citizen, the Supreme Court noted,

> We are dealing here with procedural requirements prescribed for the protection of the alien. Though deportation is not technically a criminal proceeding, it visits a great hardship on the individual and deprives him of the right to stay and live and work in this land of freedom. That deportation is a penalty-at times a most serious one-cannot be doubted. Meticulous care must be exercised lest the procedure by which he is deprived of that liberty not meet the essential standards of fairness.

326 U.S. 135, 154.

In *Kwong Hai Chew v. Colding*, 344 U.S. 590, (1953), the issue was petitioner's detention, without notice of any charge against him and without opportunity to be heard in opposition thereto. 344 U.S. 590, 595. Here, the petitioner became aware that the government was seeking his expulsion for events which he had every reason to believe had been resolved for over a decade. While he was present at his removal hearing, the petitioner's appreciable family and property ties received no meaningful, individualized consideration.

> It is well established that if an alien is a lawful permanent resident of the United States and remains physically present there, he is a person within the protection of the Fifth Amendment. He may not be deprived of his life, liberty or property without due process of law. Although it later may be established, as respondents contend, that petitioner can be expelled and deported, yet before his expulsion, he is entitled to notice of the nature of the charge *and a hearing at least before an executive or administrative tribunal.* Although Congress may prescribe conditions for his expulsion and deportation, *not even Congress may expel him without allowing him a fair opportunity to be heard.*

344 U.S. 590, 597-98. (emphasis added).

### ISSUE II: The offense should not be considered an aggravated felony notwithstanding the date of conviction.

The DHS Motion to Dismiss directs the attention of this Court to the ADAA and the Immigration Act of 1990, provisions of law which will not resolve the specific question emanating from the facts in this matter: Whether the definition of aggravated felony supplied by Illegal Immigration and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, 110 Stat. 3009 (1996), ("IIRAIRA"), may be constitutionally applied in light of the presumption against retroactivity enunciated in *I.N.S. v. St. Cyr*, 121 U.S. 2271, (Supreme Court 2001)? Simply put, the ADAA and the Immigration Act of 1990 do not include burglary as an aggravated felony. Had removal proceedings begun any time prior to April 1, 1997, (IIRAIRA's effective date), the vacated conviction would not

4

have been an aggravated felony, notwithstanding the ADAA and §§602(c) and 602(d) of the Immigration Act of 1990.

In *I.N.S. v. St. Cyr, supra,* the United States Supreme Court enunciated the pertinent inquiry for determining the constitutional viability of statutes which impose burdens for conduct already resolved, taken from it's decision in *Landgraf v. U.S.I. Film Products,* 511 U.S. 244 (Supreme Court 1994). When Congress unequivocally intends for legislation to affect rights which existed or behavior which occurred prior to the effective date, that language will be given effect unless it's application is impermissibly retroactive, and thus would violate the constitution or create manifest injustice. 511 U.S. 244, 260.

In the case of the definition of aggravated felony, Congress has spoken unambiguously. The IIRAIRA amendments state that the expanded definition of aggravated felony, "shall apply to actions taken on or after the date of the enactment of this act, *regardless of when the conviction occurred.*" IIRAIRA §321(a), (emphasis added). However, in this case, the retroactive application of the definition of aggravated felony "attaches new legal consequences to events completed before its enactment," and "unfairly imposes new burdens after the fact," 511 U.S. 244, 247. Therefore, this Court should find it's application to petitioner's case is unconstitutional.

The petitioner does not dispute the authority of Congress to enact retrospective legislation. "Retroactivity provisions often serve entirely benign and legitimate purposes, whether to respond to emergencies, to correct mistakes, to prevent circumvention of a new statute in the interval immediately preceding its passage, or simply to give comprehensive effect to a new law Congress considers salutary." However, in the case at

bar, IIRAIRA reaches a finding of guilt which was erased over a decade prior to enactment of the effective provisions, and is applied to an offense which could not have rendered the petitioner subject to any immigration consequences when he was found guilty, even if the sentencing court had never set aside the plea. Despite Congress' constitutional mandate to dictate the conditions and requirements for lawful permanent residence and citizenship, and it's almost unrestricted capacity to pass laws carrying retrospective impact, the application of IIRAIRA to the case it bar offends traditional notions of due process. Denominating the 1982 offense an aggravated felony for which petitioner must be permanently removed from the United States without any possibility of ever returning in a lawful status, "sweeps away settled expectations suddenly and without individualized consideration." When the sentencing court rendered the guilty plea null and void the petitioner had the reasonable expectation that he would suffer no further disability as a result of the events of 1982. However, the operation of IIRAIRA to petitioner's removal proceeding unfairly imposes a new burden after the fact, and thus violates the presumption against statutory retroactivity, even though the intent of Congress is clear.

**ISSUE III:    The Petitioner is eligible for relief pursuant to 8 U.S.C. §1182(c).**

The DHS urges this Court that the petitioner should not be permitted to apply for relief pursuant to 8 U.S.C. §1182(c), because he would not have been eligible for such relief on the date of his plea. *See* Respondent's Motion to Dismiss at 14. The petitioner respectfully reminds this Court that on the date of his plea, no relief would have been necessary. On August 23, 1982, the date he pled guilty, Mr. Guerra was approximately 8 months short of the seven years of lawful domicile required for 212(c) relief. He began

to accrue time as a lawful resident for purposes of 212(c) when he was admitted as a LPR on April 26, 1976. The U.S. Supreme Court and the Second Circuit both noted the importance of the respondent's reasonable reliance on 212(c) availability in entering into plea agreements which rendered him deportable. *St Cyr v INS 229 F. 3d 406, 416, Immigration and Naturalization Service v St Cyr,* 121 S. Ct. 2271, 2290.

Like the appellants in *St Cyr, supra,* and *Requeña, supra,* the petitioner could have relied on the availability of 212(c) relief to ameliorate the immigration consequences of his guilty plea because he would have continued to accumulate time as a LPR for 212(c) purposes up until the date his application for relief was adjudicated on the merits. *Matter of Lok,* 18 I&N Dec. 101, (BIA 1981). The BIA has held that a respondent found deportable by the Immigration Judge continues to accumulate time as a LPR up until an order of deportation becomes administratively final. 18 I&N Dec. 101, 102.

Removal proceedings did not begin until February 3, 2000, when the Notice to Appear was issued. The petitioner respectfully submits that the possibility of 212(c) relief was a rational hope for remaining in the United States upon which he may have relied when he waived his right to formal arraignment and a trial. This denial of a statutory right made available to scores of persons similarly situated is not the result of the petitioner's inaction or an attempt to evade the administrative resolution of his immigration problems. He complied with the terms of his probation and remained in the United States throughout all of that period. He was available to be called before the Executive Office for Immigration Review to show cause as to why he should not be deported.

Even though §212(c) relief is discretionary, the petitioner has a Due Process interest in receiving meaningful consideration of his application. *Nunez v. Bolding,* 537

F. Supp. 578, 584-85 (S.D. Tex. 1982); app. dis., 692 F.2d 755 (5th Cir. 1982); *Goncalves v. Reno*, 6 F.3d 830. In an unpublished decision the BIA stated:

> "The Service often waits several years after an alien is convicted to place him in proceedings and ...proceedings often take several years after an alien is convicted to complete...Therefore an alien who had not yet acquired the 7 years lawful domicile in the U.S. when he pled guilty to a deportable offense might reasonably have assumed that he would qualify for §212(c) relief *by the time this form of relief became necessary.*"

*Matter of Asirvatham,* A 40 104 383 (BIA, June 15th 2001). (emphasis added).

Even though an unpublished decision is not binding precedent, the result in *Asirvatham* does reflect the BIA's interpretation of the rationale of the Second Circuit in *St Cyr*, an analysis which was essentially adopted by the Supreme Court when it considered the same issue.

### ISSUE IV. The "Stop-Time Rule" rendered the petitioner ineligible for relief pursuant to 8 U.S.C. §1229a(b).

The DHS contends that the petitioner is ineligible for cancellation of removal because,

> Guerra-Moya cannot show that he meets the requirement that he has resided in the United States continuously for seven years after having been admitted in any status. The time between his entry as a lawful permanent resident alien (April 26, 1976), and the commission of the burglary offense (April 30, 1982) is 6 years and 4 days; a time period considerably less than the seven years required by the statute.

Respondent's Motion to Dismiss at 16.

The DHS relies on the BIA decision in *Matter of Pérez*, 22 I&N Dec. 689 (BIA 1999) in support of the proposition that the "stop-time rule" reaches all qualifying offenses, regardless of the date of commission. The respondent in *Matter of Pérez* argued that the presumption against retroactivity demanded that the "stop-time rule" could not be applied to a qualifying offense committed prior to it's effective date. Therein, the BIA stated:

8

> We find that Congress has provided specific direction on the scope of applicability of the section 240A rules governing the relief of cancellation of removal. The effective date provisions of the legislation implementing the new procedures provide, with certain exceptions not applicable here, that section 240A applies to aliens unless they are currently in deportation or exclusion proceedings. *See* IIRIRA §§ 304(c)(2), 110 Stat. at 3009-597; 309(c)(1), 110 Stat. at 3009-625.

22 I&N Dec. 689, 691.

In *I.N.S. v. St.Cyr, supra*, the United States Supreme Court noted:

> [T]he mere promulgation of an effective date for a statute does not provide sufficient assurance that Congress specifically considered the potential unfairness that retroactive application would produce. For that reason, *a statement that a statute will become effective on a certain date does not even arguably suggest that it has any application to conduct that occurred at an earlier date.*

121 S. Ct. 2271, 2291, *citing Landgraf* v. U.S. I. Film Products, 511 U.S. 244, 247.

(emphasis added).

The Supreme Court reaffirmed the presumption against retroactive application of statutes in removal proceedings subsequent to the BIA's decision in *Matter of Pérez, supra*. Despite the promulgation of an effective date, this Court should find that the presumption against retroactivity, in light of notions of fundamental fairness, compels a finding that an LPR will not be found ineligible for relief pursuant to 8 U.S.C. §1229a(b), for commission of an offense which would not have rendered him either deportable or inadmissible upon conviction, and which occurred prior to the effective date of IIRAIRA.

### ISSUE V. Affirmance without opinion was not proper and violates due process.

On August 23, 2002, the BIA issued a fact sheet summarizing the key reforms, and notes that three-members panels will focus on "Reviewing decisions by immigration judges or the INS that are not in conformity with the law or with applicable precedents." There is no BIA or Fifth Circuit precedent decision speaking directly to every issue here

9

presented. Specifically, there is no guidance for determining the validity of a guilty plea for which an LPR could not have been deported upon commission, which guilty plea was vacated more than a decade before the LPR could have been found removable, and which became an aggravated felony over a decade later. For all of those reasons, affirmance without opinion is improper in and of itself. While the petitioner recognizes that the BIA has a heavy case-load, his appeal raises vital challenges, and presents significant issues in light of the Supreme Court's recognition of the presumption against retroactivity in *I.N.S. v. St. Cyr, supra*, and it's reaffirmance of the primacy of due process in the cases of LPR's found removable in *Demore v. Kim, supra*. A three member panel of the Board should have clarified the outstanding questions of law presented by this matter, and failure to address or even comment on substantial questions of law amounts to a denial of due process.

WHEREFORE the petitioner prays this Court consider the arguments presented herein, and deny the respondent's motion to dismiss.

Respectfully submitted,

/s/ Jodilyn M. Goodwin

Jodilyn M. Goodwin, Esq.
1322 East Tyler
Harlingen, Texas, 78550
956-428-7212
956-428-7360(FAX)
Federal Id: 20102
Texas State Bar: 00793835

## CERTFICATE OF SERVICE

I, Jodilyn M. Goodwin, certify that today, December 12, 2003, a copy of the Petitioner's Opposition to Respondent's Motion to Dismiss, was served upon SAUSA Lisa Putnam, by hand delivery to 1717 Zoy Street, Harlingen, Texas, 78551.

_____
Jodilyn M. Goodwin, Esq.