IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
-BROWNSVILLE DIVISION-

United States District Court
Southern District of Texas
ENTERED
JAN 2 8 2004
Michael N. Milby, Clerk of Court
By Deputy Clerk

| | |
|---|---|
| FRANSISCO GUERRA MOYA,<br>Petitioner,<br><br>VS.<br><br>A.G. WINFREY, INTERIM FIELD<br>OFFICE DIRECTOR, BUREAU OF<br>IMMIGRATION AND CUSTOMS<br>ENFORCEMENT, AND<br>JOHN ASHCROFT, UNITED STATES<br>ATTORNEY GENERAL,<br>Respondents. | §<br>§<br>§<br>§<br>§   CIVIL ACTION NO. B-03-149<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Pending before the Court is Petition for Writ of Habeas Corpus (Docket No. 1) filed by Petitioner, Fransisco Guerra-Moya ("Guerra-Moya") a lawful permanent resident ("LPR"), pursuant to 28 U.S.C. § 2241, seeking relief from a final order of deportation. Also pending before the Court is a Motion to Dismiss (Docket No. 5) filed by the Respondent pursuant to FED. R. CIV. P. 12(b)(6)

### I. Factual Background

Guerra-Moya became an LPR on April 26, 1976, and has continuously resided in the United States since that time. On August 23, 1982, he plead guilty to a charge of burglary in the 105th Judicial District Court of Nueces County, Texas. Guerra-Moya was ordered to serve two years at the Texas Department of Corrections, suspended upon completion of two years probation. After successfully completing the probationary period, he was discharged on August 23, 1984, and the judgment of conviction for burglary was set aside.

On March 28, 1997, Guerra-Moya was convicted of unlawfully carrying a weapon in

Dallas County Criminal Court Number Seven and was sentenced to eight months probation along with eighty hours of community service.

The Immigration and Naturalization Service ("INS") issued a Notice to Appear ("NTA") on February 3, 2000. The NTA charged Guerra-Moya with being a citizen of Mexico who was removable pursuant to 8 U.S.C. § 1227(a)(2)(C) for conviction of carrying a firearm in violation of the law. Guerra-Moya sought discretionary relief in the Immigration Court in the form of Cancellation of Removal, pursuant to 8 U.S.C. § 1229a(b) and Voluntary Departure pursuant to 8 U.S.C. § 1229c. At a hearing on December 4, 2000, Immigration Judge Achtsam ("IJ") found Guerra-Moya removable. In an oral opinion, the IJ found that Guerra-Moya had been convicted of an aggravated felony, i.e. the burglary offense, within the meaning of 8 U.S.C. § 1101 (a)(43)(G) and failed to accrue seven years of continuous residence in the United States, as required by § 1229b(d)(1). The IJ found that Guerra-Moya's firearm offense operated to cut short the period of continuous residence, therefore making him ineligible for the relief requested.

Guerra-Moya appealed to the Board of Immigration Appeals ("BIA"), which affirmed the IJ's decision without opinion on April 10, 2003. On May 8, 2003, Guerra-Moya filed a Petition for Review with the Fifth Circuit Court of Appeals seeking review of the BIA's decision. The Office of Immigration Litigation filed a Motion to Dismiss for lack of jurisdiction, which the Fifth Circuit granted on July 20, 2003. Guerra-Moya filed the instant habeas petition on August 28, 2003.

## II. Analysis

### A. Jurisdiction

The Respondent does not contest the district court's jurisdiction over the habeas petition

2

in this case. Moreover, this court notes the analysis made in *Pequeno-Martinez v. Trominski*, 281 F.Supp.2d 902, 910 (S.D.Tex.2003) concluding that jurisdiction is proper pursuant to 28 U.S.C. § 2241(c)(3), following the holdings in *INS v. St. Cyr*, 533 U.S. 289, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001) and *Calcano-Martinez v. INS*, 533 U.S. 348, 121 S.Ct. 2268, 150 L.Ed.2d 392 (2001), and also noting the analysis in *Bosede v. Ashcroft*, 309 F.3d 441, 446 (7th Cir.2002) (post-*Calcano- Martinez* and *St. Cyr* petitioners subject to final orders of removal may only raise jurisdiction-related claims in petitions for review to the courts of appeals, and that any other statutory or constitutional challenges may only be raised through habeas corpus petitions to the district courts under 28 U.S.C. § 2241).

**B. Standard of Review**

The district court is only authorized to review the decision of the BIA. The decision of the IJ is considered only to the extent it affects the decision of the BIA. Findings of fact are reviewed to determine whether they are supported by substantial evidence. Questions of law are reviewed de novo. *See Lopez De Jesus v. INS*, 312 F.3d 155, 158 (5th Cir.2002) and *Soadjede v. Ashcroft*, 324 F.3d 830, 831 (5th Cir.2003). In this case, Guerra-Moya alleges only errors of law, not of fact. The facts are not in dispute.

**C. Retroactive Application of Statutory Definitions**

Guerra-Moya argues that his due process rights were violated when the IJ erroneously applied the current definition of an aggravated felony and the current definition of a conviction retroactively. Guerra-Moya contends that retroactively applying these definitions does not comport with due process, since new legal consequences attach to events occurring prior to the enactment of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L.

No. 104-208, 110 Stat. 3009 (1996) ("IIRIRA").

### 1. Definition of Conviction

The current definition of aggravated felony in IIRIRA found at 8 U.S.C. § 1101(a)(43)(G)[1] requires a conviction as defined in 8 U.S.C. § 1101(a)(48)(A):

> The term "conviction" means, with respect to an alien, a formal judgment of guilt of the alien entered by a court or, if adjudication of guilt has been withheld, where -
> (i) a judge or jury has found the alien guilty or the alien has entered a plea of guilty or nolo contendere or has admitted sufficient facts to warrant a finding of guilt, and
> (ii) the judge has ordered some form of punishment, penalty, or restraint on the alien's liberty to be imposed.

Section 322(c) of IIRIRA states that this definition applies "to convictions and sentences entered before, on, or after the date of the enactment" of the Act. 110 Stat. at 3009-629. The plain language of section 322(c) makes it clear that Congress intended for the definition of a conviction to be applied retroactively. *See Matter of Punu*, 22 I&N Dec. 224 (BIA 1998). *See also Landgraf v. USI Film Products*, 511 U.S. 244, 265 (1994) (noting that when new statutory provisions attach new legal consequences to prior events, "settled expectations should not be lightly disrupted," unless, as here, Congress expressly states such an intent).

Congress was clearly authorized to apply IIRIRA's provisions retroactively as the prohibition against ex post facto laws does not apply to deportation statutes. *See Galvan v. Press*, 347 U.S. 522, 531-32 (1954); *Harisiades v. Shaughnessy*, 342 U.S. 580, 594-95 (1952); *Matter of Gomez-Giraldo*, 20 I&N Dec. 957 (BIA 1995); *Matter of C-*, 20 I&N Dec. 529 (BIA 1992). Congress may constitutionally attach new immigration consequences to past criminal conduct.

---

[1] The term "aggravated felony" means -
(G) a theft offense (including receipt of stolen property) or burglary offense for which the term of imprisonment at least one year;

4

*See Leehman v. United States ex rel. Carson*, 353 U.S. 685, 690 (1957) and *Ignacio v. INS*, 955 F.2d 295, 298 (5th Cir. 1992).

The broad reach of the post-IIRIRA definition of conviction has been addressed by both the BIA and the Fifth Circuit. *See Matter of Roldan*, 22 I&N Dec. 512 (BIA 1999) (a conviction is an admission, determination, or entry of guilt linked with punishment); *Matter of Pickering*, 23 I&N Dec. 621 (BIA 2003) (if a criminal court vacates an alien's conviction for purposes other than on the basis of a procedural or substantive defect in the underlying criminal proceedings, the conviction remains a conviction for immigration purposes); *Moosa v. INS*, 171 F.3d 994, 997 1005-06 (5th Cir.1999) (an alien who completed a term of supervision pursuant to a Texas deferred adjudication statue remained convicted for immigration purposes under 8 U.S.C. § 1101(a)(48)(A)).

In this case, Guerra-Moya attempts to distinguish *Roldan* and *Moosa* on the facts. In *Roldan*, the alien plead guilty to drug possession in 1993. At that time, adjudication of guilt was withheld and Roldan was sentenced to three years of probation. Deportation proceedings commenced in 1994, prior to the completion of the probationary period and before the conviction could be set aside. Therefore, Guerra-Moya argues, at the time of deportation proceedings, Roldan was on notice that his plea placed his immigration status in jeopardy, as the conviction had not yet been set aside and Roldan was "convicted" for immigration purposes. Guerra-Moya claims that in his case, at the time removal proceedings commenced, his conviction had already been set aside and he was unaware that he remained "convicted" for immigration purposes. Guerra-Moya contends that at the time of his plea, he was not subject to removal proceedings because he had not been convicted according to the BIA and Fifth Circuit precedent. Guerra-

Moya argues that applying the definition of conviction retroactively deprives him of fair notice of the consequences of his decision to plea or take the risk of proceeding to trial.

Guerra-Moya's attempt to distinguish *Roldan* fails. *Roldan* sets forth in detail the standard for determining whether an alien has been convicted, regardless of whether removal proceedings were initiated before or after the conviction was set aside. It is likewise irrelevant whether the alien had notice, at the time of removal proceedings, that his past conduct was a new ground for removal. The only relevant determination that must be made is whether there was a "conviction" for immigration purposes, i.e. a finding of guilt linked with punishment.

In *Moosa*, an alien charged with indecency with a child, plead guilty and was sentenced to serve time in jail, work release, report to a probation officer monthly, and attend counseling resulting in deferred adjudication, which the court found, was a conviction. Guerra-Moya unsuccessfully tries to distinguish his case by arguing that he was only ordered to pay court costs, a fine, and a fee, but that he was not "sentenced" because imposition of the sentence was suspended when he was placed on probation.

*Moosa* clarifies that a term of community supervision or probation and deferred adjudication in Texas is a conviction for immigration purposes and points to the clear language of the statute, requiring only that: 1) a judge or jury has found the alien guilty or the alien has entered a plea of guilty or nolo contendere or has admitted sufficient facts to warrant a finding of guilt, and 2) the judge has ordered some form of punishment, penalty, or restraint on the alien's liberty to be imposed. *Moosa's* guilty plea met the first requirement, while the grant of deferred adjudication met the second. Likewise, Guerra-Moya plead guilty and after completion of probation his conviction was set aside, thus meeting both requirements of the statute. Guerra-

Moya's claims that he was not sentenced because the imposition of the sentence was suspended and he was placed on probation. This conclusion is incorrect. Guerra-Moya was sentenced, but the imposition of it was suspended. In any event, the only requirement for a conviction is a entry of guilt linked with punishment. In this case, the punishment came in the form of probation which was a restraint on his liberty.

Guerra-Moya also asks the Court to apply *Martinez Montoya v. INS*, 904 F.2d 1018 (5th Cir.1990), which was controlling precedent at the time of Guerra-Moya's conviction, holding that a deferred adjudication in Texas does not comport with the BIA's requirements for a conviction. In support thereof, Guerra-Moya cites the Supreme Court's decision in *St. Cyr*. Guerra-Moya argues that *St. Cyr* stands for the proposition that his conviction should be viewed under the law as it existed at the time of his plea and that applying definitions retroactively results in fundamental unfairness. Guerra-Moya states that he made a decision over fifteen years ago without fair notice of the legal consequences and in reasonable reliance on the state of the law at that time. Further he argues, had he known that his plea and resulting probation would have rendered him removable fifteen years in the future, petitioner would not have made that choice. Guerra-Moya does not argue that he is eligible for relief as provided for in *St. Cyr*. Instead, Guerra-Moya points out that he was not considered removable under the law at the time of his plea, unlike the petitioner in *St. Cyr*.

As for Guerra-Moya's reliance on *St. Cyr*, the court is not persuaded by his argument that his conviction should be analyzed under the law then in effect. Although the Supreme Court noted the harsh retroactive effect of IIRIRA, its holding turned on the retroactive effect of a law in absence of clear congressional intent, i.e. repeal of §212(c) relief will not operate retroactively

7

where Congress failed to clearly articulate that result.[2] As such, the court held that §212(c) remains available for aliens whose convictions were obtained through pleas agreements who not withstanding those convictions would have been eligible for §212(c) relief at the time of their plea under the law then in effect.

### 2. Definition of Aggravated Felony

Guerra-Moya argues that at the time of his 1982 burglary offense, under the immigration law then in effect, a conviction for an aggravated felony was not grounds for deportation. Guerra-Moya states that he was convicted before November 18, 1988, the effective date of the Anti-Drug Abuse Act of 1988, Pub. L. No. 100-690, 102 Stat. 4181 ("ADAA"), which added the aggravated felony ground of deportation, under section 7344(a)[3] to the Immigration and Nationality Act of 1952 ("INA") or ("the Act'). Specifically, section 7344(b), stated that the amendment "shall apply to any alien who has been convicted, on or after the date of the enactment of this Act (November 18, 1988), of an aggravated felony."

The Act was later amended by the Immigration Act of 1990 ("IMMACT") or ("the 1990 Act") Pub. L. No. 101-649, 104 Stat. 4978 (1990), and the aggravated felony grounds for deportation then found at section 241(a) were redesignated as section 241(a)(2)(A)(iii), but the text was identical to that of the former version. However, section 602 of the 1990 Act set out

---

[2] "Before the effective dates of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) and the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), § 212(c) of the Immigration and Nationality Act of 1952 was interpreted to give the Attorney General broad discretion to waive deportation of resident aliens. As relevant here, the large class of aliens depending on § 212(c) relief was reduced in 1996 by § 401 of AEDPA, which identified a broad set of offenses for which convictions would preclude such relief; and by IIRIRA, which repealed § 212(c) and replaced it with a new section excluding from the class anyone 'onvicted of an aggravated felony,' 8 U.S.C. § 1229b(a)(3)". *INS v. St. Cyr*, 533 U.S. 289, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001).

[3] 102 Stat. at 4470. Designated as section 241(a)(4)(B) of the Act. 8 U.S.C. § 1251(a)(4)(B) (1988).

newly reorganized deportation grounds and further stated as follows, "EFFECTIVE DATE.--The amendments made by this section, and by section 603(b) of this Act, shall not apply to deportation proceedings for which notice has been provided to the alien before March 1, 1991."

The BIA as well as the Second, Fourth, and Eleventh Circuits have found that the language of section 602 of IMMACT eliminated the temporal limitation set forth in section 7344(b) of the ADAA, i.e. new aggravated felony deportation ground applied only to convictions on or after November 18, 1988. *See Matter of Lettman*, 22 I&N Dec. 365 (BIA 1998); *Bell v. Reno*, 218 F.3d 86, 94 (2nd Cir.2000); *Lewis v. INS*, 194 F.3d 539, 545 (4th Cir.1999); *Lettman v. Reno*, 207 F.3d 1368, 1370 (11th Cir.2000).

The BIA, in arriving at its conclusion in *Matter of Lettman*, analyzed section 602 of the 1990 Act in the context of the statute as a whole and reviewed the statutory precursor to section 602(c) of the 1990 Act (former section 241(d) of the Act, 8 U.S.C. § 1251(d) (1988)). The BIA also considered existing judicial precedent which interpreted section 602(c) in the context of the firearms ground referring to *Lopez-Amaro v. INS*, 25 F.3d 986 (11th Cir.1994), cert. denied, 513 U.S. 1146 (1995).

In *Lopez-Amaro* the court addressed the question of whether the 1990 version of the firearms deportation ground applied retroactively to the respondent's 1983 conviction. The court held that the language of section 241(a)(2)(C) of the 1990 Act applied to an alien convicted of a specified firearm crime at any time after entry, stating that, "Congress explicitly intended this section to apply to aliens .notwithstanding that . . . the facts, by reason of which the alien (is deportable), occurred before the date of the enactment of this Act." *Id.* at 988 (quoting 1990 Act § 602(c)). Therefore, section 602(c) of the 1990 Act stood to override the 1988 ADAA limitation

9

for the firearms ground.

The BIA in *Matter of Lettman* found the analysis in *Lopez-Amaro* equally applicable to the aggravated felony ground in order to support it's holding that section 602(c) overrides the temporal limitation on the aggravated felony ground set forth in the ADAA. The BIA further noted that the statutory provisions in the ADAA which dealt with the aggravated felony and firearms grounds are identical in that they limited each revised ground to convictions on or after November 18, 1988. *See* ADAA §§ 7344(b), 7348(b). Therefore, the BIA held, it was logical to find that section 602(c) would equally eliminate the 1988 temporal limitations for the firearms and the aggravated felony grounds and that to conclude otherwise would require a basis for distinguishing the application of section 602(c) to the different deportation grounds, which was not apparent upon reading either the 1988 or 1990 statutes.

In sum, the BIA and circuit courts which have reviewed the temporal effect of IMMACT on the aggravated felony definition have held that any alien who is charged on or after March 1, 1991, with removability for an aggravated felony conviction is subject to removal, as section 602 of IMMACT eliminated the date restriction on the aggravated felony ground set forth in the ADAA

In addition, section 321 of IIRIRA, states that notwithstanding any other provision of law, the term applies regardless of whether the conviction was entered before, on or after the date of enactment of this paragraph. The term aggravated felony is defined as follows:

> (a) As used in this chapter -
>     (43) The term "aggravated felony" means -
>         (G) a theft offense (including receipt of stolen property) or
>         burglary offense for which the term of imprisonment at
>         (FOOTNOTE 4) least one year;

10

In this case, Guerra-Moya was convicted of burglary in 1982 and sentenced to two years imprisonment at the Texas Department of Corrections, suspended subject to completion of two years of probation. (Docket No. 5, Exhibit A). However, he was not charged with removability until February 3, 2000, which is well after the March 1, 1991, cut-off time set forth in IMMACT and certainly after the effective date of IIRIRA. In Texas, burglary is an offense for which the term of imprisonment is at least one year, therefore Guerra-Moya's burglary offense is an aggravated felony for immigration purposes and he is subject to removal even though he was convicted in 1982.

### 3. Retroactive Application of Definitions Violative of Due Process

Although it is well established that Congress has the authority to pass immigration legislation which applies retroactively, Guerra-Moya argues that in his particular case, it violates his due process rights under the United States Constitution. Guerra-Moya fails to establish that he has a liberty or property interest at stake. The Fifth Circuit, in *Gonzalez-Torres v. INS*, 213 F.3d 899, 902 (5th Cir.2000) held that retroactive application of IIRIRA's stop-time rule, discussed in further detail below, did not violate due process because aliens have no constitutionally protected interest in eligibility for discretionary relief. *See also Lopez de Jesus v. INS*, 312 F.3d 155, 161-63 (5th Cir.2002). Therefore, in this case, IIRIRA limited only Guerra-Moya's eligibility for discretionary relief, but did not infringe on a right that he possessed prior to its enactment. It is important to note, that the Supreme Court's decision in *St. Cyr* did not turn on the petitioner's due process rights, but rather the failure of Congress to clearly state its intent as to whether repeal of §212(c) relief applied retroactively.

### D. Retroactive Application of the Stop Time Rule

In order to be eligible for Cancellation of Removal, an alien must accrue seven years of continuous residence in the United States. Under 8 U.S.C. § 1229b(d)(1) the time period can be terminated if the alien commits an offense referred to 8 U.S.C. § 1182(a)(2). Burglary is classified as a crime of moral turpitude and a conviction thereof, renders an alien inadmissible under 8 U.S.C. § 1182(a)(2).[4] In this case, the IJ found that the burglary conviction stopped the time Guerra-Moya needed in order to be eligible for relief. Guerra-Moya argues that at the time he plead guilty to the burglary offense it was not considered a conviction and thus does not operate to stop the time of his continuous residence in the United States.

The argument raised by Guerra-Moya has been addressed and foreclosed upon by the Fifth Circuit in *Gonzalez-Torres*, 213 F.3d at 902.

### E. BIA Streamlining Provisions

BIA streamlining provisions, set forth at 8 C.F.R. §1003.1(e), authorize a single board member can be assigned to review a case. In addition, summary affirmance of an IJ's decision without written opinion is appropriate where: (1) results reached by the judge below were correct, (2) any errors were harmless or nonmaterial and (3) the issues on appeal are squarely controlled by existing Board of federal court precedent or the factual and legal issue are not so substantial that the case warrants issuance of a written opinion. 8 C.F.R. §1003.1(e)(4)(i). The Fifth Circuit in *Soadjede v. Ashcroft*, 324 F.3d 830 (5th Cir.2003) held that BIA streamlining

---

[4] Section 1182. Inadmissible aliens.
Subsection (a) (2)(A)(i)(I) "Except as provided in clause (ii), any alien convicted of, or who admits having committed, or who admits committing acts which constitute the essential elements of - (I) a crime involving moral turpitude (other than a purely political offense) or an attempt or conspiracy to commit such a crime.

procedures do not deprive courts of judicial review and do not violate an alien's due process rights. In its decision, the Court noted the reasoning employed by the First Circuit in *Albathani v. INS*, 318 F.3d 365 (1st Cir.2003) (summary affirmance procedures do not deprive the courts of appeal of a reasoned basis for review because the immigration judge's opinion provides the basis for review and administrative agencies should be free to fashion their own rules of procedure and to pursue methods of inquiry capable of permitting them to discharge their multitudinous duties).

In this case, Guerra-Moya argues that Board Member Cole's summary affirmance of the IJ's decision was improper and in violation of due process. Guerra-Moya raises the same arguments in this petition, that he did on appeal with the BIA. As is clear from the above analysis, the results reached by IJ Achtsam were correct, there does not appear to be any errors in his analysis, but if there are, they are certainly harmless or nonmaterial, and the issues raised are squarely controlled by BIA or Federal Court precedent. Therefore, summary affirmance without opinion was appropriate procedure according to 8 C.F.R. §1003.1(e)(4)(i). As for Guerra-Moya's argument that this procedure violates due process, it is without merit as it has been foreclosed by the Fifth Circuit's decision in *Soadjede*.

## III. Recommendation

Guerra-Moya has failed to establish that retroactive application of various immigration provisions and use of BIA streamlining procedures violate his due process rights.

**IT IS RECOMMENDED** that, Guerra-Moya's petition under 28 U.S.C. § 2241 be **DENIED**, and the Respondent's Motion to Dismiss be **GRANTED**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

DONE at Brownsville, Texas, this 27th day of January, 2004.

                                            John Wm. Black
                                            United States Magistrate Judge