United States District Court
Southern District of Texas
FILED

FEB 0 6 2004

Michael N. Milby
Clerk of Court

IN THE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| FRANCISCO GUERRA MOYA<br>Petitioner, | )<br>)<br>) |
| v. | )<br>) |
| A.G. WINFREY, INTERIM FIELD OFFICE DIRECTOR,<br>BUREAU OF IMMIGRATION AND CUSTOMS<br>ENFORCEMENT, and<br>JOHN ASHCROFT,<br>UNITED STATES ATTORNEY GENERAL,<br>Respondents. | )<br>)<br>)<br>)<br>)<br>)<br>) |

C.A. No. B-03-149

**PETITIONER'S OBJECTIONS TO REPORT AND RECOMMENDATION OF
MAGISTRATE JUDGE**

COMES NOW the petitioner, Francisco Guerra Moya, and hereby objects as follows to

the Report and Recommendation of the Magistrate Judge, ("R&R"), which recommends

that the respondent's Motion to Dismiss be granted, and his Petition for Writ of Habeas

Corpus be dismissed.  Objections will be referenced by the heading, number, and page in

which they appear in the R & R.

1.      **Definition of Conviction**

     The R&R states, at page 6, "*Matter of Roldan,* 22 I&N Dec. 512, (BIA 1999), sets

forth in detail the standard for determining whether an alien has been convicted,

regardless of whether removal proceedings were initiated before or after the conviction

was set aside. It is likewise irrelevant whether the alien had notice, at the time of removal

1

proceedings, that his past conduct was a new ground for removal." The petitioner respectfully submits that the R&R minimizes a valid and meaningful distinction between the factual situation from which the BIA's decision in *Matter of Roldan, supra,* arose, and his own. When removal proceedings were initiated, the respondent in *Roldan,* was subject to three years probation for an offense which rendered him deportable, albeit with the possibility of relief from removal. 22 I& N Dec. 512, 514. The petitioner was under no such court-imposed restriction when his proceedings began. Thus, the petitioner had no fair expectation that his legal status was in jeopardy when he was called into court. *See B.M.W. v. Gore*, 517 U.S. 559 (1996). ("Elementary notions of fairness dictate that a person receive fair notice not only of the conduct that will subject him to punishment but also of the severity of the penalty that a State may impose). More simply, the BIA's decision in *Roldan, supra,* does not contemplate an LPR's settled expectations and reasonable reliance on the state of the law when a guilty plea was entered.

Because the BIA cannot consider constitutional questions, the BIA failed to address the potential violation of due process engendered by the retroactive application of the definition of "conviction," supplied by IIRAIRA and codified at 8 U.S.C. §1101(a)(48). Therefore, the petitioner respectfully submits the BIA decision in *Roldan, supra,* does not adequately address every relevant issue concerning the applicability of the definition of conviction.

The *Roldan* decision overruled long-standing BIA precedent regarding the effect of an expungement or state rehabilitative statute on a plea of guilty in a state court. *In re Roldan,* 22 I&N Dec. 512, 531. The majority opinion in *Roldan* reviewed previous Board decisions concerning the definition of conviction, concentrating especially on *Matter of*

2

*Ozkok,* 19 I&N Dec. 546, (BIA 1988). *See also: Matter of G,* 9 I&N Dec. 159 (BIA 1960, A.G. 1961), *Matter of Ibarra-Obando,* 12 I&N Dec. 576 (BIA 1966, A.G. 1967), and *Matter of Luviano,* 21 I&N Dec. 235, (BIA 1996). *Roldan* directly addressed the question of an exception to the amended definition of conviction for first time drug offenders. "…Congress failed to provide any exception in INA §101(a)(48) to exempt first time offenders determined to be guilty of simple possession of a controlled substance from being "convicted" under the INA." 22 I&N Dec. 512, 531.  "We find no evidence in Congress' recent enactments that it intends to accord special treatment in the application of it's immigration laws to first-time drug offenders who have been accorded rehabilitative treatment under a state law." 22 I&N Dec. 512, 532.

The Magistrate Judge concludes in the R&R that 8 U.S.C. §1101(a)(48) applies to the petitioner because, "Guerra-Moya plead guilty and after completion of probation his conviction was set aside, thus meeting both requirements of the statute." *See* R&R at 6. However, the requirements to which the R&R refers were not in force and effect when the relevant events occurred. It violates Due Process where, as here, the aggravated felony definition, which requires a conviction, is applied to an offense which could not have been considered either a final conviction or an aggravated felony until 15 years after the sentencing court set the judgment aside.

In *Martínez Montoya v. INS,* 904 F.2d 1018, (5th Cir. 1990), the Fifth Circuit found that a deferred adjudication in Texas does not comport with the BIA's requirements for a conviction as outlined in *Matter of Ozkok,* 19 I&N Dec. 546, (BIA 1988). (A formal plea of guilt and any resulting punishment or restriction, and no further

3

proceedings being necessary for a future finding of guilt equals a conviction.") "Under the *Ozkok* test, in order to consider *Martínez Montoya* convicted for immigration purposes, further proceedings on the issue of his guilt must not be available before a judgment can be entered. Because further proceedings are available under the Texas deferred adjudication procedure, this requirement is not satisfied." 904 *F.2d 1018, 1026.* *Martínez Montoya* was controlling precedent in the Fifth Circuit after the plea was taken. *Martínez Montoya* controlled after the matter was set aside. Only through retroactive application of 8 USC §1101(a)(48) can the petitioner be considered to have suffered a conviction for immigration purposes. The BIA's ruling in *Roldan, supra,* on which the IJ and the BIA relied in finding petitioner ineligible for relief, never comments on retroactivity.

The R&R noted the petitioner's reliance on *Martínez Montoya, supra,* and stated, "The Court is not persuaded by his argument that his conviction should be analyzed under the law then in effect." *See* R&R at 7. As the Supreme Court stated in *St. Cyr, supra,* "The inquiry into whether a statute operates retroactively demands a commonsense, functional judgment about whether the new provision attaches new legal consequences to events completed before its enactment. *St. Cyr* at 2291 citing *Martin,* 527 U.S. 357-358 (quoting *Landgraf,* 511 U.S. at 270). Despite the specific language of Congress, determinations as to removability and eligibility for relief should be shaped to ensure that notions of settled expectations and finality are reasonably observed. Therefore, this Court should view the guilty plea and subsequent vacature under the law as it existed when it occurred. When filtered through the rationale of the United States Supreme Court in *St. Cyr, supra,* retroactive application of the definitions of conviction

4

and aggravated felony results in fundamental unfairness to this respondent because it is contrary to the notions of fair notice and reasonable reliance on the state of the law. The rationale employed by the Supreme Court in *St. Cyr, supra,* applicable in the instant matter as well, compels the presumption against retroactivity, because the petitioner is disqualified for relief as a result of incidents resolved over a decade earlier. Even though Congress was specific as to the retroactive effect of 8 U.S.C. §§1101(a)(48) and 1227(a)(3)(A)(iii), the second prong of the retroactivity analysis employed in *INS v. St. Cyr, supra,* asks whether applying those definitions produces an impermissible retroactive effect for aliens who, like petitioner, entered a plea at a time when the plea would not have rendered them inadmissible or removable.

Applications of 8 U.S.C. §§1101(a)(48) and 1227(a)(2)(A)(iii) and the elimination of any possibility of relief for people who entered into plea agreements with the expectation that they would be eligible for such relief, if relief ever became necessary, clearly creates liability for events that have already run their course. In this case, the petitioner would not have even needed any relief. As an LPR, he would neither be deportable or removable. Moreover, by operation of Texas law, especially when considered in light of this Court's ruling in *Martinez Montoya, supra,* establish that the term "conviction" cannot be fairly applied to him, because no sentence was ever imposed. The retrospective creation of encumbrance upon petitioner's LPR status through IIRAIRA §321 is particularly egregious, because his guilty plea would not have rendered him removable when entered, could not have been considered a conviction under 5th Circuit law after it was vacated, was not considered an aggravated felony until

12 years after the plea was set aside, and can only reach him now through retroactive application.

## 2. Definition of Aggravated Felony.

The R& R relies on the effective date of the Anti-Drug Abuse Act of 1988, (ADAA) to establish that the petitioner's offense is a conviction for an aggravated felony. The R&R states, at page 8, "Specifically, ADAA §7344 stated that the amendment, "shall apply to any alien who has been convicted, on or after the date of the enactment of this Act, (November 18, 1988), of an aggravated felony."" Even assuming that the 1982 burglary offense is an aggravated felony, (which the petitioner in no way concedes), by a plain reading of ADAA's effective date, the petitioner's offense was not a conviction for an aggravated felony when the ADAA took effect.

On April 30, 1982, the day the respondent committed a burglary offense, the term "aggravated felony" was not found in the INA. In *Matter of Lettman*, 22 I & N Dec. 365, (BIA 1999), a decision concerning the definition of aggravated felony and it's application in removal proceedings, the BIA reviewed the legislative and statutory history of the term.

> The aggravated felony ground of deportation was added by §7344 of the Anti Drug Abuse Act, ("ADAA"), 102 Stat. at 4470, and was designated as INA §241 (a)(4)(B). It provided for the deportability of an alien "convicted of an aggravated felony at any time after entry." In §7344(b) of the ADAA, it was stated that the amendment, "shall apply to any alien who has been convicted, on or after the date of the enactment of this Act, (November 18, 1988), of an aggravated felony.

22 I&N Dec. 365, 369.

"The ADAA set out the definition of aggravated felony...It included murder, drug trafficking crimes, and weapon trafficking violations. Subsequently, the list of

crimes...was expanded, and various effective dates were applied to amended definitions."
*Ibid at N. 4.*

"The 1990 Act amended and redesignated the deportation grounds then found at INA
§241(a). The aggravated felony ground was redesignated as INA §241(a)(2)(A)(iii). *See
Matter of Papzyan,* 20 I&N 568, (BIA 1992)." *Id* at 370.

> The revised deportation grounds were reorganized into categories that grouped
> similar deportation grounds. For example, the criminal offenses were listed under
> §241(a)(2) by the 1990 Act. The aggravated felony ground was accordingly placed
> at §241(a)(2)(A)(iii) by the 1990 Act. The wording of the renumbered aggravated
> felony ground was identical to the prior ground at §241(a)(4)(B) of the Act of
> 1988....However, other deportation grounds were revised in content.

*Id* at 373.

The BIA found that aggravated felony was properly applied to the respondent in
*Lettman* because he had been convicted, in 1987, of murder in the third degree, an
offense which had been included in the definition of aggravated felony since the
enactment of the ADAA. *Id* 368-69.

In *Matter of Truong,* 22 I &N Dec. 1090, (BIA 2000), the LPR was convicted of
second degree robbery and sentenced to six years imprisonment in 1987. The BIA once
again reviewed the statutory and legislative history of the definition of aggravated felony.
"The ADAA narrowly defined the term aggravated felony as murder, any drug trafficking
crime as defined in 18 USC §924, or any illicit trafficking in firearms or destructive
devices as defined in 18 USC §921..." 22 I&N Dec. 1090, 1098. "Since the ADAA first
used and defined the term aggravated felony in 1988, Congress has expanded that
definition, signaling it's growing concern with criminal aliens. The BIA acknowledged
that, "the respondent's offense would come within that definition. However, §501(b) of
the 1990 Act, 104 Stat. at 5048, applied that definition only to offenses committed on or

after enactment of the 1990 Act...Thus, the definition would not have applied to the respondent's offense." *Id.* (Internal citation omitted). The petitioner's burglary conviction was vacated August 23rd, 1984, *before* ADAA took effect. Burglary was not classified as an aggravated felony until IIRAIRA was enacted in 1996. The majority opinion mentioned that the ruling in *Lettman* had not spoken to the issue of whether or not a 1987 conviction for robbery could be considered an aggravated felony when it did not come within the definition of aggravated felony u ntil the enactment of IIRAIRA. *Id.* at 1097.

*Bell v. Reno* 218 F.3d 86 (2d. Cir. 2000) and *Lewis v. I.N.S,* 194 F.3d 539 (4th Cir. 1999), which the R&R cites as authority for retroactive application of the definition of aggravated felony to the petitioner's 1982 conviction through IMMACT 90, are clearly distinguishable from the case at bar. *See* R&R at 9. The underlying criminal offenses on which the aggravated felony grounds were based in *Bell, supra,* and *Lewis, supra,* were included in the original definition of aggravated felony. Specifically, the petitioner in *Bell* was convicted of first degree sodomy and found deportable under the aggravated felony ground of sexual abuse of a minor. 218 F.3d 86, 87. Likewise, the petitioner in *Lewis* was convicted of possession with intent to deliver and found deportable under the aggravated felony ground of drug trafficking. 194 F.3d 539, 540. Additionally, neither petitioner could plausibly claim any expectation of the ameliorative effect of a subsequent court action vacating their respective convictions prior to the initiation of deportation or removal proceedings, as the petitioner may here. Hence, the decisions in *Bell* and *Lewis* which the R&R cites to establish that the temporal limitations of the definition of aggravated felony were dissolved by IMMACT 90 do not address the central question

8

posed by this petition: Whether the definition of aggravated felony may be retroactively applied to a vacated conviction which could not have been described as an aggravated felony until 14 years subsequent to it's commission, without violating notions of fundamental fairness.

### 3. Retroactive Application of Definitions Violative of Due Process.

At page 11, the R&R states, "Guerra Moya fails to establish that he has a liberty or property interest at stake", then cites the Fifth Circuit decision in *González-Torres v. I.N.S.,* 213 F.3d 899, (5th Cir. 2000). The petitioner completely concurs that the petitioners in *Gonzales Torres, supra,* failed to adequately demonstrate that their unlawful presence and possible eligibility for discretionary relief does not require special recognition or protection under the constitution. However, the basis of the constitutional protection claimed by the undocumented non-citizens in *Gonzalez Torres, supra,* is not nearly as firm as that petitioner, as petitioner is a long-time LPR who was placed in proceedings and initially found to be not deportable. As Justice Souter cautioned in *Demore v. Kim,* 538 U.S.____ No. 01-1491, (April 29, 2003). "The constitutional protection of an alien's person and property is particularly strong in the case of LPR's. The immigration laws give LPRs the opportunity to establish a life permanently in this country by developing economic, familial, and social ties indistinguishable from those of a citizen." The opportunity to become a naturalized citizen of the United States is the chief benefit of LPR status. An LPR must demonstrate significant attachment to the United States in the form of continuous physical presence, acquisition of English as a second language and considerable knowledge of our nation's culture, history, and system of government. *See* 8 U.S.C. §1427. Congress' plenary power to establish and enforce

9

those requirements is specifically enumerated in Article I, section 8, clause 4 of the United States Constitution. Nevertheless, Congress authority is not unduly invaded if the doctrine of substantive due process is applied to long-time LPR's.

Under the doctrine of substantive due process, courts have traditionally recognized respect for the liberty of the individual and the sanctity of the family among the values upon which our nation was founded. *See Meyer v. Nebraska* 262 U.S. 390 (1923), *Pierce v. Society of Sisters,* 268 U.S. 510 (1925); *Skinner v. Oklahoma,* 316 U.S. 535 (1942); *Griswold v. Connecticut,* 381 U.S. 479 (1965); *Roe v. Wade,* 410 U.S. 113 (1973).

Under the INA as currently construed, instead of further rehabilitating himself in order to obtain citizenship and realize the predominate benefit of LPR status, the petitioner's status must be terminated, and he must be ousted with no possibility of ever obtaining lawful status in the future, notwithstanding any other aspect of his life. The petitioner stipulates that the Fifth Circuit does not consider eligibility for discretionary relief to be a fundamental right. However, all of the Fifth Circuit decisions rejecting a constitutional right to relief eligibility are easily distinguishable from the case at bar. For example, the defendant/appellant in *United States v. López Ortíz,* 313 F.3d 225 (5th Cir. 2002), was placed in removal proceedings as a result of a conviction for a drug offense. He waived his right to counsel, admitted the charge of removability as an aggravated felon, and waived appeal. 313 F.3d 225. Lopez Ortiz only claimed a right to seek an administrative determination of his LPR status after he was deported and returned unlawfully. 313 F.3d 225, 226-27.

10

The Fifth Circuit found that López Ortiz' due process rights had not been violated

because he was afforded the procedural protections required by the United States

Supreme Court. 313 F.3d 225, 330. Further, the BIA has consistently held that 212(c) is

not available to a former LPR who left the United States subsequent to an order of

deportation or removal. *See Matter of Duarte,* 18 I&N Dec. 329 (BIA 1982), *Matter of*

*Gunyadin,* 18 I&N Dec. 324, (BIA 1982).  However, and most significantly for the legal

arguments in this petition, the Fifth Circuit stated in *Lopez Ortiz* that eligibility for 212(c)

is not a liberty or property interest warranting due process protection." 313 F.3d 225, 331.

The defendant/appellant in *Lopez Ortiz* knowingly waived his right to counsel, did not

contest charges, and waived appeal in an administrative hearing before an IJ. Mr. Guerra

had notice of the charges and was present at all hearings, yet was not afforded an

opportunity to be heard on the merits of his substantial equities in the United States. In

his administrative hearing, Lopez Ortiz willingly declined the opportunity to present any

equities he may have accrued during his period of lawful residence.  Even though the

procedure afforded Mr. Guerra may have been constitutionally adequate, the effect of

retrospectively characterizing his offense as an aggravated felony and terminating Mr.

Guerra's lengthy residence without consideration of family and property ties does not

sufficiently recognize the gravity of his loss as a result of his expulsion, and thus

disregards substantive due process. In *Lopez Ortiz*, the Fifth Circuit considered whether

the procedural safeguards were adequately observed. Here, Mr. Guerra urges this Court

that despite the efficacy of the procedural safeguards, substantive due process requires

any long-time LPR an opportunity to present evidence of everything he or she will lose,

11

including the devastation to the lives of United States citizen family members upon the abrupt termination of his lawful status.

In *López de Jesús v. I.N.S.,* 312 F.3d 155 (5th Cir. 2002), the non-citizen, who had been an LPR for less than one year when removal proceedings were initiated, applied for a discretionary waiver for immigrants inadmissible as a result of smuggling family members. However, the waiver had already been statutorily eliminated when Lopez de Jesús applied for it. 312 F. 3d 155, 156. This Fifth Circuit found it's decision in *Gonzalez Torres v. I.N.S.* 213 F.3d 899, (5th Cir 2000), to be controlling in the case of an applicant for a waiver pursuant to INA §212(d)(11). "While petitioners may have expected that they would be eligible for suspension of deportation, IIRAIRA's amendment limited only their eligibility for discretionary relief; it did not infringe on a right they possessed prior to it's enactment." 312 F.3d 155, 170.  The Fifth Circuit equated eligibility for discretionary suspension of deportation with eligibility for the discretionary "family smuggling waiver."

The petitioner respectfully urges this Court that a discretionary waiver under INA §212(d)(11) and suspension of deportation are two waivers of a type and quality distinct from 212(c) relief and cancellation of removal for long-time LPR's. 8 U.S.C. §1229a(b). Substantive due process cannot plausibly be raised by a non-citizen whose only claim to lawful status is a continuous period of unlawful presence. Thus, the case at bar is meaningfully distinguishable from those presented in *López de Jesús v. I.N.S., supra,* and *Gonzalez Torres v. I.N.S., supra.* Suspension of deportation only required a showing of seven years unlawful presence and good moral character. *See* (former) 8 U.S.C. §1182(a). Any LPR who smuggled a family member was eligible for the waiver found at (former) 8

U.S.C. §1181(d)(11). LPR status is not easily acquired. Neither suspension nor a discretionary waiver at INA §212(d)(11) required the applicant to present evidence of outstanding equities, significant property ties, or value to the community. An applicant for suspension or the family member smuggling waiver could not normally assert a right to substantive due process for a lack of a lengthy period of lawful permanent residence and the accompanying property interests which invariably develop over the course of many years in the United States.

The R& R concludes that the petitioner has no fundamental right to seek a discretionary waiver, yet fails to address the termination of his LPR status and consequent loss of all benefits emanating therefrom as a result of the effect of a conviction which was vacated over a decade previously. In *Finlay v. I.N.S.* 210 F.3d 556 (5th Cir. 2000) the appellant challenged the retroactive application of the term "aggravated felony" to his conviction for arson. The Fifth Circuit dismissed the petition based on it's decision in *Max-George v. Reno,* 205 F.3d 194, (5th Cir. Feb. 24, 2000). However, prior to it's conclusion, the Fifth Circuit again cited *Max George v. Reno* and stated: "Unless a petitioner proves that his or her claims are within the writ constitutionally protected (a situation which . . . is unlikely), we must summarily dismiss for lack of jurisdiction." 210 F.3d 556, 557, citing *Max George v. Reno,* 205 F. 3d 194, 202. Even upon declining to recognize eligibility for relief as a fundamental right, (upon which a claim to substantive due process may be based), the Fifth Circuit "left the door open," to the LPR who can prove that a lengthy period of lawful residence, when considered in conjunction with significant family ties and property interests in the United States, is an interest protected by the Fifth Amendment.

In *Alfrache v. Cravener, supra*, another pre-St. Cyr decision, the Fifth Circuit held "that AEDPA § 440(d) prohibits Alfarache's seeking discretionary relief from deportation under INA § 212(c)." 203 F.3d 381, 383. Alfrache also argued that the timing of deportation proceedings violated his right to due process and that he had been denied equal protection because 212(c) relief remained available for non-citizens who had been placed in exclusion proceedings. This Court rejected those claims and noted, "Furthermore, the relief to which Alfarache may have been entitled under INA § 212(c) "was couched in conditional and permissive terms. As a piece of legislative grace, it conveyed no rights, it conferred no status." 203 F.3d 381, 383-84. Nevertheless, despite the Fifth Circuit's reasoning in *Alfrache*, the petitioner asserts that a lengthy period of lawful permanent residence and assimilation to the language and culture of the United States in the case of a person with tangible property interests and profound family ties merits individualized consideration. The Magistrate Judge did not agree that eligibility for relief is a fundamental right, and stated, "IIRAIRA only limited Guerra-Moya's eligibility for discretionary relief, but did not infringe on a right he possessed prior to it's enactment." *See* R&R at 11. Prior to IIRAIRA, the petitioner had the settled expectation that his LPR status would not be terminated absent fair notice and an opportunity to be heard on the merits. Petitioner's substantive due process claim is not based solely on a fair opportunity to seek discretionary relief. Here, the I.N.S. attempted to rescind the petitioner's status, and the state of the law when those proceedings began established that petitioner was not at risk of losing his status. Due to subsequent changes in the law, most of which occurred over a decade after the state of Texas dismissed the charge against him, the petitioner automatically lost his status. While Congress has a legitimate interest

14

in protecting society from burglars, an automatic order of removal is not a rational means of achieving that end. The petitioner does not challenge the district court's conclusion that Congress is endowed with the authority to protect the nation from elements deemed dangerous. Neither does he attempt to minimize the gravity of his offense.  However, the petitioner respectfully urges this Court that even assuming that an opportunity to present evidence of significant equities in the form of lengthy residence and family and property ties does not fall within the category of "fundamental right," the automatic deportation of a long-time LPR who was never incarcerated for his offense does not make anyone any safer. Review of the record reveals that the state of Texas never incarcerated the petitioner in order to protect society. Yet under the INA as currently construed, an individual LPR's length of residence, family and property ties, service to his adopted country, or evidence of rehabilitation are irrelevant. Even though the petitioner is no demonstrable danger to the community, his LPR status still must be automatically terminated without an opportunity to seek relief, because his offense was denominated an aggravated felony over a decade subsequent to it's dismissal.  This combination of effects, retroactively designating an offense which would not have rendered Mr. Guerra removable as an aggravated felony for which no individual consideration will be afforded, does not appreciably further the goal of the legislation.  The ostensible means of protecting the nation, (automatic deportation), is not a logical solution when the subject of those proceedings has never been found to be a danger from which society is in need of protection. Even if this court does not recognize eligibility for discretionary relief as a fundamental right worthy of substantive due process, the effect of including Mr. Guerra in the aggravated felony category is not a sound exercise of legislative authority.

### E. BIA Streamlining Provisions

At page 13 of the R&R, the Magistrate Judge concludes that summary affirmance under the BIA Streamlining Regulations was proper. The R&R correctly cites the Fifth Circuit decision in *Soadjede v. Ashcroft,* 324 F.3d 830, (5th Cir. 2003) and outlines the criterion: (1) The IJ's results were correct, (2), any errors committed by the IJ were harmless, and (the issues on appeal are squarely controlled by existing Board or federal court precedent.

If legally significant facts fall in recognizable patterns, precedent is easily applied by means of comparison of significant factual circumstances. Further review and analysis of particular dynamics shaping the claim cannot meaningfully impact the ultimate result. The denial of the motion to reconsider provides no explanation in connection with that independent evaluation. "A statement of reasons for a decision is a norm of administrative law." *Guentchev v. INS,* 77 F.3d 1036, 1038 (7th Cir. 1996).

While BIA precedent and decisions of the federal circuits address the issues piecemeal, no single administrative or federal court decision resolves the ponderous questions here presented. In sum, the petitioner challenges the applicability of the aggravated felony definition to an offense for which he was originally found not to be deportable, and the conviction ceased to exist before proceedings to terminate his LPR status were initiated. The petitioner respectfully asserts that the issues herein presented are clearly not resolved by BIA and federal court precedent, and notions of substantive due process and fundamental fairness require a different outcome. Therefore, this matter does not fulfill all of the requisites for affirmance without opinion.

WHEREFORE the petitioner, Francisco Guerra-Moya, respectfully requests this Court deny respondent's Motion to Dismiss and grant his Petition for Writ of Habeas Corpus.

Respectfully submitted,

Jodilyn M. Goodwin, Esq.
1322 East Tyler
Harlingen, Texas, 78550
956-428-7212
956-428-7360(FAX)
Federal Id: 20102
Texas State Bar: 00793835

## VERIFICATION

I, Jodilyn M. Goodwin, certify that I am familiar with the facts as stated above, and that they are true and correct to the best of my knowledge and belief.

Jodilyn M. Goodwin, Esq.

## CERTFICATE OF SERVICE

I, Jodilyn M. Goodwin, certify that today, February 6, 2004, a copy of the Petitioner's Objections to the Report and Recommendation of the Magistrate Judge was served upon SAUSA Lisa Putnam, by hand delivery to 1717 Zoy Street, Harlingen, Texas, 78551.

Jodilyn M. Goodwin, Esq.

17